UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN B. SULLIVAN<br>Plaintiff,<br><br>    v.<br><br>DUMONT AIRCRAFT CHARTER, LLC,<br>DUMONT AVIATION, LLC,<br>DUMONT GROUP, LLC<br>KEVIN WARGO, DANIEL PIRAINO, and<br>KEITH WARGO,<br>Defendants. | CIVIL ACTION NO. _____<br><br><br>**JURY DEMAND** |

**COMPLAINT AND JURY DEMAND**

I. Introduction

1.      Plaintiff Justin Sullivan signed a commission-only contract with one or more of

defendants Dumont Aircraft Charter LLC, Dumont Aviation, LLC, Dumont, Group, LLC

(collectively, "Dumont") to serve as sales director for Dumont's charter aircraft and aircraft sales

business. Dumont failed to pay Sullivan the contractually promised commissions, however,

thereby violating the Massachusetts Wage Act since Sullivan performed his services in

Massachusetts. Dumont also failed to pay Sullivan any compensation for weeks at a time,

therefore violating the Massachusetts Minimum Wage Act and Fair Labor Standards Act.

Sullivan brings this action for unpaid commissions and unpaid wages.

II. Parties

2.      Plaintiff Justin Sullivan is a former employee of the Dumont Aircraft Charter

LLC, Dumont Group, LLC, and Dumont Aviation, LLC, and a resident of Norwell,

Massachusetts.

3.      Dumont Aircraft Charter, LLC is, upon information and belief, a Delaware limited liability company that sells chartered planes and private planes.

4.      Dumont Aviation, LLC is, upon information and belief, a Delaware limited liability company that sells chartered planes and private planes.

5.      Dumont Group, LLC is, upon information and belief, a Delaware limited liability company that sells chartered planes and private planes.

6.      Kevin Wargo is director and co-owner of Dumont Group, LLC, and, upon information and belief, a Delaware resident. Kevin Wargo exercised day-to-day management of Dumont Group and interacted regularly with Sullivan.

7.      Daniel Piraino is director and co-owner of Dumont Group, LLC, and, upon information and belief, a Delaware resident. Piraino exercised day-to-day management of Dumont and interacted regularly with Sullivan.

8.      Keith Wargo is chief financial officer of Dumont Group, LLC, and, upon information and belief, a Delaware resident. Keith Wargo exercised day-to-day management of Dumont and interacted regularly with Sullivan.

### III. Facts

9.      Sullivan began working for Dumont as Sales Director on or about November 4, 2015.

10.     Sullivan received his employment contract from Dumont Group. The contract stated that he would be working exclusively for Dumont Aviation.

11.     Sullivan represented to clients that worked for Dumont Aircraft Charter and referred to himself as Sales Director of Dumont Aircraft Charter. He used this title in his email signature block to clients and to the individual defendants.

12.     Sullivan had two job responsibilities: 1) Direct the sales of charter flights on the aircraft that Dumont owns and/or manages, and; 2) Sell aircraft on behalf of Dumont.

13.     As compensation, Dumont promised to pay Sullivan:

    a.     2.25% of all revenue generated on all of Dumont's charter flight sales;

    b.     50% of aircraft sales commission, up to $100,000, for all aircraft sold by Sullivan;

    c.     Residual charter commission on the operation and charter sales of aircraft sold by Sullivan. Dumont's baseline charter commission is 10%.  This meant that if Sullivan sold a contract for 15% charter commission, Sullivan was entitled to the 5% difference.

14.     Sullivan was not paid any compensation by Dumont other than commissions.

15.     From the start of his employment to the end, Sullivan worked diligently to the benefit of Dumont for over forty hours per week and often as much as seventy, often seven days per week.

16.     In October 2015, one of Sullivan's customers Gregg Cook purchased a private jet from Dumont for $2,000,000 at a charter commission rate of 15%. Sullivan earned a $50,000 commission on this sale.

17.     At the end of December 2015, Sullivan received one payment from Dumont, which he was told constituted the November 2015 residual for the sale to Cook.

18.     At the end of January 2016, Sullivan received one payment from Dumont, which he was told constituted the December 2015 residual for the sale to Cook.

19.     In December 2015, another of Sullivan's customers purchased a private jet from Dumont for approximately $2,000,000. Sullivan did not receive commissions on this sale or residual charter.

20.     In January 2016, another of Sullivan's customers, the owner of a professional baseball team, entered into a letter of intent to purchase a private jet for $2.2 million with a charter commission of 15%, and made a $250,000 nonrefundable deposit. Sullivan did not receive commissions on this sale or residual charter.

21.     In November, December, and January, and February, Dumont had been booking millions of dollars worth of charter flights for which Sullivan should have been receiving commissions. He received no commission payments, however, until the next-to-last day of his employment, as described below.

22.     Sullivan directed charter sales for Dumont for over 100 days without receiving any wages.

23.     In mid-February, Sullivan received payment from Dumont in the amount of $7,523.59, which Dumont stated was the commissions for the charter flights booked and flown in November and December.

24.     Dumont did not pay Sullivan his full commissions, however:

    a.     Dumont improperly and illegally deducted the gross salary and benefits of one of its employees from Sullivan's commission;

    b.     Dumont improperly excluded over 75% of all of its flight bookings in its commission calculation;

    c.     Dumont only paid Sullivan 1.9% of flight bookings, not 2.25% as promised.

25.     Dumont's actions were willful and knowing.

26.     Dumont continues to owe Sullivan damages of an amount to be proven at trial,

including but not limited to:

    a.      Charter commission of 2.25% of company flight sales which was

        improperly calculated for November – December 2015, and completely

        unpaid for January 1 – February 16, 2016;

    b.      Sales commission of 50% of Dumont's profit on two sold jets described

        above;

    c.      Residual charter commission of 5% on the revenue of the three sold jets.

## IV. Personal Jurisdiction

27.     Sullivan performed all of his work from his home in Massachusetts.

28.     Dumont knew that Sullivan was performing all of his work from his home

29.     Dumont paid Sullivan's compensation through a direct deposit to Sullivan's bank

account with a Massachusetts address.

30.     Dumont sent Sullivan's employment contract to Sullivan's Massachusetts home.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

## COUNT I
## (MASSACHUSETTS WAGE ACT)

The actions as set forth above, including, *inter alia,* failing to pay Plaintiff his definitely-determined commissions and minimum wage for all hours worked, violate the Massachusetts Wage Act, M.G.L. c. 149, § 148, causing damages. This claim is brought under M.G.L. c. 149, § 150.

## COUNT II
## (FAIR LABOR STANDARDS ACT)

The actions as set forth above, including, *inter alia,* failing to pay Plaintiff the minimum wage, violate the Fair Labor Standards Act, 29 U.S.C. § 207, causing damages.

## COUNT III
## (BREACH OF CONTRAT)

The actions as set forth above, including, *inter alia,* failing to pay Plaintiff his contractually-owed commissions, constitutes a breach of contract, causing damages.

## COUNT IV
## (UNJUST ENRICHMENT/QUANTUM/MERUIT)

By not receiving his contractually-promised commissions, Plaintiff conferred a benefit on Defendants by which they were unjustly enriched, causing damages.

WHEREFORE, Plaintiff prays this Court:

1.    ORDER the Defendants to pay the Plaintiff compensatory damages for lost wages, front pay, and emotional distress;

2.    ORDER the Defendants to pay treble damages, liquidated damages, and Plaintiff's attorneys' fees and costs as allowed by law;

3.    Any further relief as is just and necessary.


Respectfully submitted,

PLAINTIFF JUSTIN SULLIVAN
By his attorneys,


/s/ Joseph Sulman___
Joseph L. Sulman, BBO #663635
David I. Brody, BBO # 676984
Law Office of Joseph L. Sulman, Esq.
1001 Watertown Street, Third Floor
West Newton, MA 02465
(617) 521-8600
jsulman@sulmanlaw.com
dbrody@sulmanlaw.com


April 13, 2016