UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN B. SULLIVAN, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO. |
| | ) 16-10713-DPW |
| v. | ) |
| | ) |
| DUMONT, | ) |
| | ) |
| Defendant. | ) |

<u>MEMORANDUM CONCERNING DENIAL OF MOTION [#119] FOR RECONSIDERATION
REGARDING THE COOK AGREEMENT</u>
July 16, 2019

Plaintiff Justin B. Sullivan, a former employee of Dumont Aircraft Charter, LLC, brings this lawsuit against his former employer, its affiliate, Dumont Aviation, LLC, and the owner of the businesses, Kevin Wargo (together "Dumont" or "the Defendants"), for their alleged failure to pay him for work he performed. On March 7, 2019, I granted in part and denied in part the parties' cross-motions for summary judgment regarding various counts. *See Sullivan* v. *Dumont Aircraft Charter, LLC*, 364 F. Supp. 3d 63 (D. Mass. 2019).

The Defendants filed a motion [Dkt. No. 119] seeking reconsideration of my judgment with respect to Mr. Sullivan's common law breach of contract claim regarding the Cook aircraft commissions. At the final pretrial conference, I denied the

motion for reconsideration in a ruling from the bench.  This Memorandum sets forth in writing the reasons for my decision.

## I. BACKGROUND[1]

The factual background relevant to the motion was discussed in some detail in my original memorandum and order dealing with the parties' cross-motions for summary judgment, *see Sullivan*, 364 F. Supp. 3d at 70-76.  I recount here only the factual basis for Mr. Sullivan's breach of contract claim as relevant to the Cook aircraft commissions.

### A. *Factual Background*

In August 2015, three months before Mr. Sullivan became an employee of Dumont, he introduced a customer named Gregg Cook to Mr. Wargo.  Following the introduction, Mr. Sullivan and Dumont agreed (the "Cook Agreement") that, if Mr. Cook purchased an aircraft from Dumont, Dumont would pay Mr. Sullivan a commission of $50,000 plus 5% of future charter sales on the aircraft. *Sullivan*, 364 F. Supp. 3d at 71.  This oral agreement was not memorialized in writing and was not explicitly incorporated into any separate arrangements between the parties or into the Term Sheet regarding Mr. Sullivan's employment by Dumont, which the

---

[1] Because the parties have not provided any new evidence of record in support of the motion for reconsideration, but instead have referred me to documents that were submitted at the summary judgment stage, I draw these facts from my original memorandum and order.

2

parties concluded in October 2015 (the "Employment Agreement"). *Id*. at 71-72. The Cook Agreement did not identify any further responsibilities, conditions, or duties that Mr. Sullivan needed to perform to be entitled to a Cook aircraft commission and did not include a specific end date for residual commissions. *Id*. at 71. In summary judgment submissions, the parties did not contest the terms of this oral agreement or otherwise argue that it had somehow become unenforceable.

Mr. Cook did, in fact, agree to purchase an aircraft from a subsidiary of the Dumont Group in August 2015; the sale was completed in November 2015 and the Cook aircraft remained in Dumont's charter fleet until August 22, 2017. *Id*.

On November 6, 2015, a few days after Mr. Sullivan formally started his employment with Dumont, Dumont paid Mr. Sullivan the $50,000 commission owed on the Cook Aircraft. *Id*. On December 31, 2015, Ms. Sullivan received his first residual commission payment in the amount of $3,772 for revenue generated by the Cook Aircraft in November. *Id*. He received his second residual payment of $11,527.78 for revenue generated in December 2015 on January 31, 2016. *Id*. Both these payments were paid as W-2 wages with the applicable withholdings.

Mr. Sullivan did not receive any further residual payments for the Cook aircraft, though it remained in operation as part

3

of Dumont's charter fleet until August 2017.[2]  Mr. Sullivan voluntarily terminated his employment with Dumont on February 16, 2016 and, as part of that termination, agreed to part ways with no past or future monetary obligations owed by either side. *Sullivan*, 364 F. Supp. 3d at 75-76.  At the time, Mr. Sullivan did not mention being owed any residual commissions and the parties did not mention their separate agreement with respect to the Cook aircraft.

**B.    *Procedural Posture***

On April 13, 2016, Mr. Sullivan filed this action alleging violations of the Massachusetts Wage Act ("Wage Act"), M.G.L. c. 149 § 148, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, common law breach of contract, and unjust enrichment and *quantum meruit*.

During a hearing regarding the parties' cross motions for summary judgment, Mr. Sullivan conceded that the Cook Agreement was concluded before Mr. Sullivan became an employee of Dumont and therefore fell outside the scope of his claims under the Wage Act and the FLSA.[3]  *Id*. at 78-79 n. 6.  Consequently, I considered only whether Dumont's failure to pay Mr. Sullivan any residual payments for revenue generated by Cook aircraft

---

[2] The parties have stipulated that the outstanding balance of Cook aircraft commissions due to Mr. Sullivan is $186,149.12.
[3] Dumont had advanced this contention in support of its motion for summary judgment on the Wage Act and FLSA claims.

4

commissions after December 2015 constituted a breach of contract independent of the Employment Agreement. *Id*. at 88 n. 14. In doing so, I concluded that the Cook Agreement had not been superseded by or incorporated into the Term Sheet which provided the basis for the Employment Agreement; the parties concededly provided no evidence to the contrary. *Id*. at 89.

I also concluded that, under the terms of the Cook Agreement, Mr. Sullivan was entitled to receive residual payments for revenue generated by the Cook Aircraft after December 2015. Because the Cook Agreement did not specify an end date and because Dumont pointed to no record evidence indicating that the parties agreed to terminate the Cook Agreement, Mr. Sullivan was entitled to unpaid commissions on the Cook Aircraft through August 22, 2017. *Id*. at 89. I granted summary judgment to Mr. Sullivan as to liability on his breach of contract claim with respect to the Cook Agreement and reserved the question of damages for trial. *Id*. *See supra* note 2.

I held a status conference on April 16, 2019, during which I instructed the parties to file documents detailing their position on damages and scheduled the trial for July 15, 2019.

On June 9, 2019, Dumont filed its motion for reconsideration, arguing that the evidence of record presented a

genuine issue of material fact with respect to the date of termination of the Cook Agreement.

## II. STANDARD OF REVIEW

The Federal Rules of Civil Procedure do not explicitly discuss motions for reconsideration. Nevertheless, it has long been understood that "a district court has the inherent power to reconsider its interlocutory orders." *Fernandez-Vargas* v. *Phizer*, 522 F.3d 55, 61 n. 2 (1st Cir. 2008). Though permissible, "motions for reconsideration are not to be used as a vehicle for a party to undo its own procedural failures [or] allow a party to advance arguments that could and should have been presented to the district court prior to judgment." *United States* v. *Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (internal quotations omitted) (modification in original).

Such motions are appropriate only if "the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *Id.; see also Palmer* v. *Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006) ("Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." (internal citations omitted)).

Consequently, the granting of a motion for reconsideration is "an extraordinary remedy which should be used sparingly." *Cardiofocus, Inc.* v. *Cardiogenesis Corp.*, 859 F. Supp. 2d 192, 202 (D. Mass. 2012) (internal quotations omitted).

### III. ANALYSIS

I note at the outset that Dumont does not argue that it has discovered new evidence or that there has been a change in the law that would require me to reconsider my original judgment with respect to the Cook Agreement. Instead, it argues that my judgment reflects a "manifest error of law or was clearly unjust" because the question whether the termination of Mr. Sullivan's employment with Dumont also terminated the Cook Agreement raises a genuine question of fact that must be decided by a jury.

Though certainly available to Dumont at the time, this argument was not squarely presented to me at the summary judgment stage in the context of the breach of contract claim. *See Sullivan* v. *Dumont Aircraft Charter, LLC*, 364 F. Supp. 3d 63, 89 n. 15 (D. Mass. 2019). At most, the Defendants appeared to argue that Mr. Sullivan was not entitled to commissions in perpetuity because *the Term Sheet* did not expressly contemplate such commissions and because Dumont did not agree to pay post-employment commissions to Mr. Sullivan in its conversations regarding the termination of his employment. Indeed, Dumont

7

consistently argued that the Cook Agreement fell outside the scope of Mr. Sullivan's employment and therefore outside the scope of the Wage Act and the FLSA. Yet, Dumont now seeks to have the Cook Agreement treated as having been incorporated into the Term Sheet, though there was no evidence of record to suggest this was the Parties' shared intent.

Apart from its failure to meet the requirements for a motion for reconsideration, Dumont's refocused argument with respect to termination fails on the merits. To be sure, Dumont is correct that "where a contract is to be gathered from talk between the parties, and especially from talk on more than one occasion, the question what the contract was, if controverted, must usually be tried by the jury, as a question of fact." *Gassett* v. *Glazier*, 43 N.E. 193, 195 (Mass. 1896). But the terms of the Cook Agreement are not controverted here. Instead, Dumont argues only that the Cook Agreement was either incorporated into the Term Sheet or was separately terminated when Mr. Sullivan and the Defendants agreed to part ways in February 2016.

Both scenarios would require mutual asset by the parties to be effective and there is no evidence here of a *meeting* of the minds or of *mutual assent* to either. *See, e.g.*, *Sea Breeze Estates, LLC* v. *Jarema*, 113 N.E.3d 355, 361 (Mass. App. Ct. 2018) (holding that written conversations between the parties

did not modify an oral contract because there was no "meeting of the minds."); *Puma* v. *Gordon*, 402 N.E.2d 110, 115 (Mass. App. Ct. 1980). I recognize that "[a]n agreement to rescind a contract need not be made in any formal, express terms," and that "mutual asset to a rescission may be inferred from the attendant circumstances." (citing, *inter alia*, *Flaherty* v. *Goldinger*, 144 N.E. 374, 375 (Mass. 1924)). No such inference is appropriate here.

For its part, Dumont points to Mr. Wargo's deposition to show that the parties did, in fact, agree to terminate the Cook Agreement when Mr. Sullivan stopped working for Dumont, but the deposition transcript supports only the conclusion that Mr. Wargo *believed* that the Cook Agreement had been terminated. [*See* Dkt. No. 119-1 at 22, 44]. There is no evidence of record that the parties mutually agreed to terminate the Cook Agreement or even that Mr. Sullivan believed the parties' mutual agreement to terminate the employment relationship without any past or future obligations extended to terminate the Cook Agreement. [*See* Dkt. No. 119-1 at 44; Dkt. No. 119-2 at 21].

Even drawing all reasonable inferences in favor of Dumont, then, I cannot say as a matter of law that the Cook Agreement was terminated along with Mr. Sullivan's employment in February 2016. *See Salem Laundry Co.* v. *New England Teamsters and Trucking Industry Pensions Fund*, 829 F.2d 278, 280 (1st Cir.

1987) ("Parties do not become contractually bound until they mutually asset to bind themselves to an agreement. . . . Courts determine that mutual assent, not on the basis of what goes on inside the parties' heads, but rather on the basis of what they say and do." (internal citations omitted)). I cannot say that a reasonable jury could conclude that Mr. Sullivan, by failing to mention the Cook Agreement in his communications with Mr. Wargo in February 2016, assented to the termination of that Agreement. Because Dumont has not pointed to any evidence to suggest that the Cook Agreement had a specified end date or was formally terminated, it has failed to demonstrate that my original judgment with respect to the breach of contract claim was "based on a manifest error of law or was clearly unjust." *Allen*, 573 F.3d at 53.[4]

Resolution of the question of termination necessarily resolves the amount in damages Mr. Sullivan can recover under his breach of contract claim. The parties, of course, specifically focused their summary judgment motions on liability

---

[4] I note that Dumont does not argue that it paid Mr. Sullivan any residual commissions for revenue earned by the Cook Aircraft between January and February 2016, while Mr. Sullivan was still employed by Dumont. *Sullivan*, 364 F. Supp. 3d at 71-72. Thus, if I were to find, as Dumont urges, that the Cook Agreement was terminated in February 2016, when Mr. Sullivan left Dumont's employment, Dumont is still liable for breach of contract for failing to pay Mr. Sullivan any residual commissions to which he was entitled under the Cook Agreement for January and February 2016.

and did not adduce any evidence with respect to damages, purporting instead to reserve that question for trial.[5]

## IV. CONCLUSION

Dumont has not shown that it is entitled to reconsideration of the breach of contract claim with respect to the Cook aircraft. For the reasons outlined above, I DENY the Defendants' motion [Dkt. No. 119] for reconsideration.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[5] As noted, *supra* note 2, in advance of trial, the parties stipulated to the damages calculations if liability is established. Only questions of liability on which summary judgment was denied are being presented to the jury.