UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUSTIN B. SULLIVAN<br>Plaintiff,<br><br>v.<br><br>DUMONT AIRCRAFT CHARTER, LLC,<br>DUMONT AVIATION, LLC, and<br>KEVIN WARGO,<br>Defendants. | CIVIL ACTION NO. 16-10713-DPW<br><br>**JURY DEMAND** |

**PLAINTIFF'S PETITION FOR ATTORNEYS' FEES**

I. Introduction.

Plaintiff Justin Sullivan submits this petition for attorneys' fees per the Court's instructions on July 18, 2019. As the successful plaintiff in vindicating claims under the Massachusetts Wage Act, M.G.L. c. 149, § 150, Sullivan is authorized and entitled to recovery of his reasonable attorneys' fees. *See Lipsitt v. Plaud*, 466 Mass. 240, 251 (2013).

Despite a vigorous defense, stonewalling on discovery, significant factual and legal disputes, Sullivan prevailed and received court rulings and jury verdict that will result in over $500,000 judgment, after mandatory trebling under the Wage Act. His counsel devoted significant time and resources to this matter and achieved virtually complete success on all claims. Accordingly, the petition for attorneys' fees and costs should be granted in full.

This case involved complicated factual and legal issues. Pursuing the claims effectively required a substantial time commitment, particularly considering the tenacious defense from Defendants and that Defendants decided to produce documents in the regular course of business, and thus Sullivan received 19,600 pages documents largely without organization.

1

The public interest clearly favors a grant of this full petition to encourage competent counsel to represent those with valid, however difficult, claims. "The function of an award of attorney's fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel." *Riverside v. Rivera*, 477 U.S. 561, 575 (1986). Although Sullivan received near complete victory, he had made an across-the-board reduction of 10% on his total fees before requesting an award of attorneys' fees as explained below. This accounts for any possible duplication of work, administrative tasks, and any work on common law claims that did not overlap with his Wage Act claims.

For all of these reasons and the reasons explained herein, this Court should grant the petition and grant this petition for the requested fees and costs in full.

## II. Background

### *a. Factual Basis for Legal Hours*

The number of legal hours devoted to this matter is reasonable and appropriate in proportion to the significance of the matter, the needs of the case, and the Defendants' counsel's litigation tactics. The majority of the work up until trial was done by Attorney Andrea Haas, with only minimal oversight from Attorney Joseph Sulman. Thus, as a result of how this case was staffed prior to trial, the total fee request is lower than most cases.[1] At trial, Attorney Sulman was assisted by Attorney Haas. *See generally* Affidavit of Joseph Sulman, ¶2, attached hereto as Exhibit 1.

### i. *Filing Fee and Motion to Dismiss*

---

[1] Two other junior attorneys assisted briefly on this case, but Sullivan is not seeking any award for their hours.

Sullivan filed his complaint on or about April 13, 2016. Drafting and filing the complaint took 12.1 hours for Attorney Sulman Sulman. Sulman Aff., ¶20. I spent 13 hours drafting the motion to dismiss. *Id.*

ii. *Discovery*

Attorney Haas took primary responsibility for discovery, with oversight by Attorney Sulman. *Id.*, ¶21. Sullivan took four depositions and Defendants took the deposition of Sullivan. Affidavit of Andrea Andrea Haas, ¶<u>14</u>, attached as <u>Exhibit 2</u>. Two of the depositions lasted multiple days with the permission of Defendants. Sulman Aff., ¶23.

Discovery in this matter should not have been extensive, but it was made so by Defendants' intransigence. Counsel served narrow requests for documents, interrogatories, and deposition notices concerning charter sales and aircraft sales. Defendants first did not adequately produce documents showing Sullivan's commissions until counsel filed a twenty-page motion to compel on April 11, 2017. Haas Aff., ¶12. The Court allowed the motion for purposes of "discovery related to charter sales for Lyon flights booked by the Dumont sales department during the plaintiff's employment." *Id.* The Court also allowed the motion for purposes of "monthly owner statements reflecting charter proceeds during plaintiff's employment." *Id.* The Court also allowed the motion for purposes of "owner statements and flight logs for the Cook aircraft" during Plaintiff's employment. *Id.* Following a supplemental motion the Court ordered production of all Cook invoices and flight logs for the period following Plaintiff's termination. *Id. All* of these documents were critical in Sullivan obtaining successful outcomes at summary judgment and at trial. *Id.*

Defendants produced 19,600 documents and spreadsheets but without any discernable organization, index, chronology, or other key indicating which documents were responsive to

3

which request. Haas Aff., ¶13. Although Sullivan moved to compel Defendants to organize the

documents in some discernable fashion, this request was denied by the Court based on the

reasoning that the documents were in searchable format. *Id.*; (ECF No. 54.). Sullivan's counsel

therefore had to spend extensive time performing key word searches to locate responsive

documents within the voluminous discovery. *Id.*

Sullivan seeks 159.2 hours for Attorney Haas's time on discovery and 37.8 hours for

Attorney Sulman's time on discovery. Haas Aff., ¶11; Sulman Aff., ¶ 21. It is not possible to

carve out the discovery of the claims that were dismissed at summary judgment from the claims

that proceeded to trial, even were it required. All witnesses who were deposed had information

relevant on all claims. Plaintiff's counsel worked on the entire case during discovery, not

individual claims. Haas., ¶16.

Discovery-Related Motions

Due to Defendants' refusal to reasonably participate in discovery, Sullivan filed two

motions to compel and a motion for sanctions. All of the motions were substantively granted.

Haas Aff., ¶17; Sulman Aff., ¶24. While this Court overruled Magistrate Judge Donald Cabell's

order that Defendants pay Plaintiff monetary sanctions, the Court explicitly assumed that Judge

Cabell was correct that a motion for sanctions was necessary to compel Defendants to produce

the documents. Summary Judgment at 52.; Haas Aff., ¶17.  Hence, a third motion to compel

rather than a motion for sanctions would have been necessary in any event.

Sullivan seeks 37.3 hours for Attorney Haas's time on these motions, including her time

drafting, revising, research, and identifying factual support in Defendants' document production.

Haas Aff., ¶18. Sullivan seeks 14.5 hours for Attorney Sulman's time on these motions. Sulman

Aff., ¶25.

Damages & Mediation

Calculating both the contract damages and the unpaid commissions due to Sullivan under each of his claims required detailed review of hundreds of customer invoices to summarize flight charges and calculate the commissions due over the appropriate period. Haas Aff., ¶19. Sullivan's counsel could not refer this review to non-legal staff because it required factual knowledge to categorize flight charges appropriately and legal knowledge of what counted as commissionable activity under the Wage Act. *Id.*

Preparing for mediation also required more time than a typical case because of the sequence of the litigation. *Id.*, ¶20. The parties' unsuccessful mediation occurred before any depositions had been completed. Preparing for mediation required identifying the most persuasive documents, compiling the damages calculations, and preparing multiple demands at the request of the Magistrate mediator. *Id.*

Sullivan seeks 16.5 hours for Attorney's Haas time on calculating damages, and 22.2 hours for her time on preparing for and attending mediation. Haas Aff., ¶21. The time spent compiling damages information and seeking agreement regarding competing damage calculations ultimately resulted in a trial stipulation which streamlined the presentation of evidence at trial significantly. Sullivan seeks .9 hours and 5.8 hours for Attorney Sulman's time on calculating damages and mediation, respectively. Sulman Aff., ¶26.

Summary Judgment

This matter involved two substantial summary judgment motions, one from each party. Although this required a significant number of hours from both Attorney Haas and Attorney Sulman, the time was well spent as it resolved a substantial portion of the claims. Sulman Aff., ¶27. The Court granted summary judgment in favor of Plaintiff on the breach of contract claim

regarding the Cook commissions and made several rulings of law on the Wage Act claims that

resolved legal and evidentiary issues for trial.  This allowed the parties to expedite the

presentation of evidence at trial (with the encouragement of the Court), take two days of

testimony, and complete the trial in four days. *Id.*

Completing summary judgment also took longer than usual because the Court asked the

parties to supplement their briefs after the hearing on the motion. *Id., ¶*28. This, presumably,

aided the Court in drafting its summary judgment decision that allowed the parties to prepare for

trial with a road map on the legal issues.

Attorney Sulman spent 73.7 hours total on work devoted to summary judgment and

Attorney Haas spent 63.5 hours total on work devoted to summary judgment. Sulman Aff, ¶29;

Haas Aff., ¶24.

Trial Preparation

Sullivan began preparing for trial began immediately after the Court issued its summary

judgment decision. This work initially consisted of reviewing calculation of damages and

presenting a new settlement demand to Defendants. When settlement discussions failed, Sullivan

proposed stipulating to total potential damages based on the agreed-upon sales to streamline the

trial. Sulman Aff., ¶30.  Sullivan's counsel proposed using total sales calculation offered by

Defendants during mediation to calculate the stipulations, even though Defendants numbers did

not precisely match the totals that Sullivan had calculated using owners' statements and invoices.

*Id.* Sullivan drafted a stipulation, with the Court's approval, and submitted it to the Defendants'

for review. Haas Aff., ¶25. Per the Court's instructions, Sullivan also prepared a list of issues

remaining to be tried. Sulman Aff., ¶31. Sullivan also opposed Defendants' motion for

reconsideration on the Court's ruling denying Defendants' motion for summary judgment on the breach of contract claim on the Cook commissions. *Id.*

Trial preparation also required review of deposition transcripts to prepare examinations of witnesses and drafting motions in limine. Sulman Aff., ¶32; Haas Aff., ¶31. Counsel also met with Sullivan several times to prepare him for trial and testimony and reviewed potential exhibits. Attorneys Haas and Sulman were careful not to duplicate tasks as they prepared for trial: Attorney Haas was charged with drafting certain motions in limine, and Attorney Sulman was charged with drafting others; Attorney Haas was charged with examining some witnesses, and Attorney Sulman was charged with others, etc. Haas Aff., ¶31; Sulman Aff., ¶¶31-33.

The extensive trial preparation work allowed the parties to expedite the trial. In particular, because Sullivan insisted on stipulating to damages, Sullivan did not need to present any evidence to the jury on damages or any factual or legal questions on the Wage Act. Absent this stipulation, Sullivan would have needed to present evidence of his sales and prove they were definitely determined and due and payable under the Wage Act. The trial would have been more complicated and assuredly longer. Sulman Aff., ¶33.

In total, Sullivan seeks 114.4 hours for Attorney Haas's time on trial preparation and 180.1 hours for Attorney Sulman for trial preparation. Haas Aff., ¶32.; Sulman Aff., ¶180.

Trial

Sullivan seeks 43.8 hours for Attorney Sulman's time at trial and 27.7 hours for Attorney Haas's time at trial. Haas Aff., ¶37.; Sulman Aff., ¶35. The difference in hours is due to the post-courtroom time spent by each attorney.

Post-Trial

As of August 7, 2019, Attorney Sulman has worked seven hours post-trial on preparing a proposed judgment and drafting this motion for fees. Attorney Haas has worked 4.1 hours on post-trial matters including drafting the proposed judgment and preparing her afffdavit for this motion. Haas Aff., ¶39.; Sulman Aff., ¶36.

b. *Factual Basis for Hourly Rate*

**Attorney Joseph Sulman**

Attorney Joseph Sulman opened the Law Office of Joseph Suman in 2011 specializing in plaintiff-side employment litigation and civil rights. Sulman Aff., ¶3. He is a 2005 graduate of Georgetown University Law Center, *cum laude*. *Id.*, ¶4. Since opening his firm, which now employs two attorneys and an office manager, Attorney Sulman has represented numerous individuals before federal and state courts as well as the Massachusetts Commission Against Discrimination. He regularly takes his cases to trial. *Id.*, ¶¶5-9.

Attorney Sulman is a leading practitioner in cases under the Massachusetts Wage Act and its related statutory provisions. In 2017, the Massachusetts Appeals Court decided *Niles v. Huntington Controls, Inc.*, 92 Mass. App. Ct. 15 (2017) in his client's favor, which held that state agency opinion letters interpreting the Prevailing Wage Law must be given deference, resulting in the reversal of the trial court's grant of summary judgment for the defendant and an order to enter summary judgment on liability in the plaintiff's favor. *Id.*, ¶7. He also was lead counsel in a successful appeal to the Massachusetts Appeals Court in a case of first impression holding that an employee's demand for reimbursement of business expenses following a pattern of failing to reimburse such expenses is protected activity under the anti-retaliation provisions of the Wage Act, M.G.L. c. 149, § 148A. *See Fraelick v. PerkettPR, Inc.*, 83 Mass. App. Ct. 698 (2013). *Id.*

His work has also resulted in other precedent-setting cases. In 2015, he argued the rarely-litigated issue of the bona fide occupational qualification exception under Chapter 151B before the Supreme Judicial Court in *Pugsley v. Police Dept. of Boston*, 472 Mass. 367 (2015). *Id., ¶*8. While the SJC affirmed dismissal of the discrimination claim on standing grounds, the decision established that an employer's bona fide occupational defense could not be justified based on statistical information alone. *Id.* He also served as co-counsel for a transgender inmate at MCI-Norfolk in her federal lawsuit to enforce her Eighth Amendment right to minimally adequate medical care. That litigation resulted in precedent-setting decisions. *Kosilek v. Spencer*, 889 F. Supp. 2d 190 (D. Mass. 2012); *Kosilek v. Spencer*, 774 F.3d 63 (1st Cir. 2014). *Id.*

Attorney Sulman has charged hourly paying clients between $400 and $425 per hour during the pendency of this litigation.[2] *Id.*, ¶3. In November 2017, he successfully obtained a verdict on a hostile work environment claim under M.G.L. c. 151B in Middlesex Superior Court and received an attorneys' fee award at a rate of $400 per hour.[3]  *Id.* Based on that, Sullivan asks for a rate of $425 for Attorney Sulman, which is fair and reasonable considering his skill and experience and the complexity of this case.

**Attorney Andrea Haas**

Attorney Haas is a 2008 graduate of Suffolk University Law School, *cum laude*. Haas Aff., ¶4. She worked at the Massachusetts Commission Against Discrimination following law school. *Id.* In 2009 she joined a small plaintiff-side employment law firm, during which time she

---

[2] This Court informed Sullivan's counsel, during discussions on the schedule of the fee petition, that any evidence of his hourly rate billed to actual clients during the time period of this litigation would be the most probative evidence of his reasonable hourly rate. Sullivan has therefore focused on this evidence instead of offering affidavits from other attorneys who could attest to his counsel's reasonable rate.

[3] The decision on the fee award was issued in March 2018, but the trial was in November 2017.

9

served as second chair on two jury trials. She joined the Law Office of Joseph Sulman in 2016.

At this office she have served as second chair on two jury trials prior to this matter. *Id.*, ¶5.

In November 2017, along with Attorney Sulman, Attorney Haas assisted in obtaining a

successful verdict on a hostile work environment claim under M.G.L. c. 151B in Middlesex

Superior Court and received an attorneys' fee award of at a rate of $275 per hour.  *Id.*, ¶6.

Attorney Haas is a member of the Massachusetts Employment Lawyers' Association. *Id.*, ¶7.

Sullivan requests a rate of $300 per hour for Attorney Haas, which is fair and reasonable

considering her skill and experience and the complexity of this case. *Id.*, ¶8.

**Total Fee Request**

The total hours and fees requested is presented in the following table:

| Attorney | Total Hours Worked | Rate | Fee | 10% Reduction | **Fee Request** |
|---|---|---|---|---|---|
| Andrea Haas | 458.3 | $300 | $137,490 | | |
| Joseph Sulman | 390.4 | $425 | $165,920 | | |
| | | | $303,410 | $30,341 | **$273,069** |

As shown in the above table, the total reasonable attorneys' fees incurred by Justin

Sullivan in this case, from filing of the complaint through August 7, 2019, total $303,410 based

on 390.4 hours of Attorney Sulman's time and 458.3 hours of Attorney Haas's time. Haas Aff.,

¶40; Sulman Aff., ¶¶37-38. Sullivan is reducing these fees by 10% to account for the few claims

that were unsuccessful, any clear overlap in work between the Wage Act claim and the

successful breach of contract claim, and any duplication of work or administrative tasks that may

not have been accounted for in the time entries. Other than this reduction, it is Sullivan's position

that the facts overlapped on all claims, as explained below, and thus any further reduction in the

fee award for unsuccessful clams is unwarranted. Thus, Sullivan requests attorneys' fees in the amount of **$273,069.**

Sullivan further requests reimbursement of reasonable costs and expenses in the amount of **$6,230.78**. Sulman Aff., ¶39. Sullivan costs and expenses actually total $6,346.78, but he does not seek reimbursement for $116 in parking where two separate attorneys attended a hearing on the same date and parked separately. These costs and expenses can further be broken down as follows:

| Category | Expense |
| --- | --- |
| Travel | 492.00 |
| Depositions | 5,036.65 |
| Courier | 117.46 |
| Trial Expense | 584.67 |
| **Total** | **6,230.78** |

## III. Standard of Review

An award of attorneys' fees is mandatory if a party prevails under M.G.L. c. 149, §§ 148, 150. Because the claim arises under state law, for *Erie* purposes, the issue of attorney's fees is substantive and not procedural in nature. *In re Volkswagen and Audi Warranty Extension Litig.,* 692 F.3d 4, 15 (1st Cir. 2012). Consequently, state-law principles govern the award of fees. *See Travers v. Flight Servs. & Sys.*, No. 11:10175-RGS, 2014 U.S. Dist. LEXIS 112960, at *1 (D. Mass. Aug. 14, 2014) (noting that parties assumed, incorrectly, that federal law governed question of attorneys' fees under Wage Act in diversity case).

Under Massachusetts law, a court assesses a petition for attorneys' fees based on the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards

in similar cases.'" *Berman v. Linnane*, 434 Mass. 301, 303 (2001), The court determines a reasonable fee award using a "lodestar" approach, which multiplies the number of hours reasonably spent on the case by a reasonable hourly rate. *See Fontaine v. Ebtec Corp.*, 415 Mass. 309, 324 (1993).

## IV. <u>Argument</u>

1.   <u>As The Prevailing Party, Sullivan Is Entitled To An Award of Attorneys' Fees Under The Lodestar Approach.</u>

Sullivan is indisputably the prevailing party in his lawsuit against Defendants. Sullivan brought five counts in his Second Amended Complaint: violation of the Massachusetts Wage Act, M.G.L. c. 149, § 148, for failure to pay commissions and minimum wage; violation of the Fair Labor Standards Act, 29 U.S.C. § 207, for failure to pay minimum wage; breach of contract for failure to pay contractually-owed commissions; unjust enrichment; and retaliation under the Wage Act, M.G.L. c. 149, § 148A, for Defendants' filing of baseless counterclaims. Ultimately Sullivan did not pursue the FLSA claim or the retaliation claim, although not due to a lack of evidence or lack of merits. The only claims dismissed were the unjust enrichment claim arising out of the sale of the Saperstein aircraft and a specific element of the breach of contract claim related to the sale of the Seldorff aircraft. "[T]he Court is not obliged to discount for the unsuccessful plaintiffs and claims." *Dixon v. International Brotherhood of Police Officers*, 434 F. Supp.2d 73, 83 (D. Mass., 2006) (declining to reduce award due to unsuccessful claims because facts were interconnected); *Trainor v. HEI Hosp., LLC*, 699 F.3d 19, 35 (1st Cir. 2012) (upholding recovery of fees for unsuccessful age discrimination claim that was included with successful retaliation claim).

Sullivan anticipates that Defendants may also argue that a sizeable portion of his damages award is due to the breach of contract claim for the Cook commissions, which does not

carry an attorneys' fee provision. While this is technically accurate, the facts clearly overlap with

the Wage Act claims. The charter flights on the Cook aircraft earned Sullivan charter

commissions under the Term Sheet. *See Giuliano v. Piantkowski,* 20 Mass. L. Rep. 17, 2005

Mass. Super. LEXIS 455, at *31-32 (August 15, 2005) (Botsford, J.) (awarding attorneys' fees

for breach of contract claim and M.G.L. c. 93A claim where facts were intertwined);

*Phetosomphone v. Allison Reed Grp., Inc*., 984 F.2d 4, 7 (1st Cir. 1993) (explaining that a district

court may find that federal claim and state clam are so interrelated and time spent preparing for

claims so overlapping that "an attempt to separate the time attributable to one or the other would

be futile").

> A prevailing party's entitlement to fees does not require that those
> fees be incurred exclusively on the claim that gives rise to the
> entitlement. Thus, where common-law and statutory claims are
> based on the same series of events or where the facts related to
> each claim substantially overlap, courts do not require counsel to
> cull out time spent developing and proving the common-law
> claims even though the entitlement to fees arises only because of
> the statutory claim.

*Abrano v. Abrano*, Nos. 140503, SUCV2014-3509-BLS 2, SUCV2015-1639-BLS2, SUCV2015-

1367-BLS2, 2018 Mass. Super. LEXIS 108, at *14 (June 28, 2018), *citing Incase, Inc. v. Timex*

*Corp.,* 421 F. Supp. 2d 226, 244 (D. Mass. 2006).

Even had Sullivan's attorneys attempted to contemporaneously track which claims they

were working on – the Wage Act claims or the breach of contract claims – such an endeavor

would have been futile. Defendants did not produce documents according to any categorization.

Sullivan's attorneys could not have devoted certain hours to reviewing documents related to

when the parties agreed to terminate the Cook residual commissions, stop the clock, and then

move on to charter commissions. Similarly, during depositions, questioning of Kevin Wargo and

others at Dumont focused on the entire relationship with Sullivan, only one piece of which was the Cook transaction. At summary judgment, Sullivan devoted only one page of his argument section in the motion for partial summary judgment to argue that Defendants breached the contract to pay the 5% residual commission. (Mem. iso Mtn. for SJ at 12-13, ECF No. 93.).

What made Sullivan's case particularly challenging at trial was the claim that the contract entitled him to charter commissions on all flight charges regardless of who booked the sale. This theory is counter-intuitive to the typical commission structure where a salesperson receives a commission on sales he or she personally made. Sullivan's counsel needed to convince the jury that the particular business model of Dumont and its relationship with Lyon Aviation meant that this was only commission plan that would make sense for Dumont. Proving such a case was no sure bet, and Sullivan ran the risk of not recovering anything for his unpaid charter commissions.

Accordingly, under the applicable Massachusetts standard, *supra*, this Court should award the full amount of Sullivan's request for attorneys' fees and expenses, as already reduced. The nature of the case and the issues presented was superficially simple but deceptively complex on the facts. While the case was about unpaid commissions and thus a straightforward dispute at its core, Defendants offered a factual defense based on categories of flights that had no link to contemporaneous records. This complicated the summary judgment briefing and the presentation of evidence at trial, as Sullivan had to address *the absence of evidence* as a defense – since certain categories that Defendants defined themselves were never mentioned during negotiations, they were not part of his commission plan. He addressed this by offering evidence of the business model of Dumont, its relationship with Lyon Aviation, and contemporaneous statements by Dumont's executives showing its understanding of the commission plan.

14

The results obtained for Sullivan cannot be questioned. At trial, the jury was not asked specifically about Wage Act violation, but whether he had proven whether Defendants deducted Maria White's salary without his agreement, and whether certain categories of flights were included in his commissions. The jury answered no as to the deduction, and yes to each category except owner flights. This was a resounding victory. Based on Sullivan's calculation, the judgment, after treble damages but before mandatory state interest, should be entered at $508,280.23. This includes the $186,149.12 in breach of contract damages for the Cook commission.

In other Wage Act cases, a Superior Court judge in 2018 awarded $390,750 in attorneys' fees following a trial on Wage Act claims (based on a request of $540,285). *See Parker v. EnerNOC, Inc.*, 35 Mass. L. Rep. 174, 2018 Mass. Super. LEXIS 97, at *2 (June 4, 2018), attached as Exhibit 3.[4] In 2017, Judge Saylor awarded $294,839.30 in attorneys' fees following a trial on a Wage Act unpaid commissions claim (based on a request of $486,656). *See Ellicott v. Am. Capital Energy, Inc.,* No. 14-12152-FDS, 2017 U.S. Dist. LEXIS 50593, at *12 (D. Mass. Apr. 3, 2017), attached as Exhibit 4.[5]

Finally, as explained in the fact section above, the hours worked and reasonable rates charged by Attorney Sulman and Attorney Sulman warrant this Court awarded the entire amount

---

[4] The Superior Court in *Parker* found that an hourly rate of $495 for the plaintiff's lead attorney was reasonable. *Id.* at *10. The decision does not mention how long the trial lasted.

[5] The original fee request in *Ellicot* was reduced by Judge Saylor in part because plaintiff's attorneys were the second firm on the case and entered their appearance near the close of fact discovery, yet they reported over 1,300 hours on the case for three attorneys. *Id.* at *11-12. Still, Judge Saylor noted that the case was "made substantially more difficult by defendants' approach to the litigation." *Id.* at *12. Thus, *Ellicot* should serve as a useful comparison to this case for several reasons. Sullivan did *not* retain an expert or bill 1,300 hours after fact discovery, but his case was made challenging by Defendants' discovery tactics – which required multiple motions to compel – and defense strategy. *Ellicot*'s reduced award is close to the fee request by Sullivan.

of requested fees of $273,069 at rates of $425 and $300, respectively, and award costs of

$6,230.78.


                                        Respectfully submitted,
                                        PLAINTIFF JUSTIN SULLIVAN,
                                        By his attorneys,


                                        _____/s/ Joseph Sulman_____
                                        Joseph L. Sulman, BBO #663635
                                        Andrea L. Haas, BBO #671844
                                        Law Office of Joseph L. Sulman
                                        391 Totten Pond Road, Suite 402
                                        Waltham, MA 02451
                                        (617) 521-8600
                                        jsulman@sulmanlaw.com
                                        ahaas@sulmanlaw.com

August 9, 2019

## CERTIFICATE OF SERVICE

        I hereby certify that I served this document on counsel for all Defendants and ECF on
August 9, 2019.

                        _/s/___Joseph Sulman_____
                        Joseph Sulman